UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10577-RWZ

DIANA D. MERRIAM, *et al.*

v.

DEMOULAS SUPER MARKETS, INC., *et al.*

ORDER

March 20, 2012

ZOBEL, D.J.

Plaintiffs Diana D. Merriam, Arthur S. Demoulas, and Fotene J. Demoulas are shareholders of nominal defendant Demoulas Super Markets, Inc. ("DSM" or "the company"), and participants in DSM's Profit Sharing Plan ("the Plan"), which is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. They bring this action on behalf of the Plan against DSM, Plan trustees Arthur T. Demoulas, William F. Marsden, and D. Harold Sullivan (collectively, "Trustee defendants"), and several members of DSM's Board of Directors – William J. Shea, J. Terence Carleton, Sumner Darman, Edward H. Pendergast, and Charles Roazen (collectively, "Director defendants") – for damages and equitable relief related to losses which the Plan allegedly suffered as a result of defendants' actions.[1]

---

[1] Counts I and II of the seven-count Verified Complaint (Docket # 1) are against the Trustee defendants for breach of fiduciary duty and "co-fiduciary duty," respectively, under ERISA, 29 U.S.C. §§ 1104(a)(1) and 1105(a). Counts III and IV allege the same against the Director defendants. Count V, against Shea, Darman, Roazen, and Carleton, alleges that they violated 29 U.S.C. §§ 1104(a)(1) and 1105(a) by failing to investigate fiduciary breaches by the Trustee defendants. Count VI alleges that Director defendants breached their fiduciary duties to DSM in violation of Mass. Gen. Laws ch. 156D, §

Defendants have moved to dismiss the claims against them for lack of standing and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[2] Along with their opposition, plaintiffs have filed several motions,[3] including a Motion for Leave to File an Amended Verified Complaint (Docket # 47).

**I. Background**

To evaluate defendants' motions to dismiss, I accept as true the facts alleged in the Verified Complaint and also consider documents incorporated therein (either directly or by reference), matters susceptible to judicial notice, and matters of public record. Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008). The relevant facts follow.

The Plan is an employee pension benefit plan under ERISA, 29 U.S.C. § 1002(2)(A). It is governed by certain documents including an Investment Policy, which describes it as a "defined contribution profit sharing plan maintained to provide retirement benefits and ancillary death benefits to participants and their beneficiaries." Docket #1 ¶ 16-17; id. Ex. A at 4. Plaintiffs are Plan participants and DSM shareholders. DSM and the Trustee defendants are ERISA fiduciaries of the Plan.

---

8.30(a) and Massachusetts common law. Count VII requests, pursuant to 28 U.S.C. §§ 2201-02, that the court declare that none of the defendants is entitled to indemnification by DSM for legal expenses or liability. Plaintiffs also request that the court exercise its equitable powers under 29 U.S.C. §§ 1109(a) and 1132(a)(2)-(3) to permanently remove the Trustee defendants as trustees of the Plan.

[2] The Trustee defendants filed a Motion to Dismiss the Complaint for Failure to State a Claim or in the Alternative to Stay the Case (Docket # 29). Defendants Carleton, Roazen, and Shea filed a Motion to Dismiss (Docket # 33) and, with DSM, a Motion to Stay (Docket # 34). Defendants Pendergast and Darman each filed a Motion to Dismiss or Stay (Docket ## 35 and 37, respectively). The motions to stay were premised on the pendency of an investigation into plaintiffs' allegations by special counsel to DSM's Board; since that investigation has concluded, all motions to stay are moot.

[3] Docket # 55 (Plaintiffs' Motion for Leave to File Surreply in Response to Trustee Defendants' Motion to Dismiss); Docket # 57 (Plaintiffs' Motion that the Court Take Judicial Notice of Positions Asserted by Defendant Trustees in Related Case).

The Investment Policy identifies DSM's Board as a "fiduciary" of the Plan and, among other things, assigns to the Board the responsibility of appointing, monitoring, removing, and replacing Trustees. Docket # 1 ¶ 28, id. Ex. A at 4. "Each member of the DSM Board is therefore a fiduciary of the Plan." Docket # 1 ¶ 28

In November 2007 and May 2008, respectively, the Trustee defendants invested in Freddie Mac and Fannie Mae preferred stock allegedly in knowing violation of the Investment Policy and their fiduciary duties under ERISA, which caused the Plan to lose in excess of $46 million. The Trustees informed the Board of these losses and asked the Board to authorize a payment to the Plan in the amount of approximately $46 million. The five Director defendants voted to authorize DSM to make such a payment. On January 3, 2009, DSM made the so-called "restorative payment" to the Plan in the amount of $46,183,772. Id. ¶ 74. Plaintiffs allege that DSM and, indirectly, its shareholders suffered a loss caused by the Trustees of the Plan when DSM made the restorative payment.

They further allege that the Director defendants breached their fiduciary duties to the Plan by "concealing" the Trustees' breach through voting for the restorative payment, failing to remove the Trustee defendants from their positions as trustees of the Plan, failing to commence legal action against the Trustees on behalf of DSM to recover the restorative payment, and (save for director Pendergast) failing to properly investigate the Trustee defendants' actions. Id. ¶¶ 75, 79, 84-87, 137, 142-53. Among other things, plaintiffs seek to recover for "losses to the Plan as well as the Plan's lost profits" caused by defendants' alleged breach of fiduciary duty. Id. ¶¶ 121, 129, 134,

141, 153. In addition, plaintiffs request injunctive relief – in the form of removal of the Trustee defendants from their position as trustees – and "other equitable relief, as appropriate." Id.

## II. Standard

"When a plaintiff alleges injury to rights conferred by a statute, two separate standing-related inquiries pertain: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)." Katz v. Pershing, LLC, --- F.3d ----, 2012 WL 612793, at *7 (1st Cir. 2012). Defendants contend that, among other things, plaintiffs lack both constitutional and statutory standing to bring their claims for relief under ERISA (Counts I-V), including their request for injunctive or other equitable relief.

The Article III standing issue calls into question the court's subject matter jurisdiction and is analyzed under Fed. R. Civ. P. 12(b)(1), United Seniors Ass'n Inc. v. Philip Morris USA, 500 F.3d 19, 23 (1st Cir. 2007); "[b]y contrast, statutory standing goes to the merits of the claim." Katz, 2012 WL at *7.  Before reaching the merits, I must first decide whether plaintiffs have Article III standing. Katz, 2012 WL at *8 ("[F]ederal courts normally must decide whether a particular plaintiff has constitutional standing before considering that plaintiff's statutory standing.") (citing Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 95, 97 & n.2 (1998)); Philip Morris, 500 F.3d at 23 ("Federal courts are required to determine whether Article III jurisdiction exists prior to proceeding to the merits of the case.").

### A. Article III Standing for Counts I-V

A federal case or controversy under Article III of the Constitution exists only when the party soliciting federal court jurisdiction (usually the plaintiff) has standing. Katz, 2012 WL, at *3. "[A] plaintiff must have standing to bring each and every claim that she asserts." Id. To have constitutional standing a plaintiff must establish three elements: injury, causation, and redressability. Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. (quoting Lujan, 504 U.S. at 561) (internal quotation marks omitted). Since we are at the pleading stage, I must determine whether plaintiffs have sufficiently alleged facts required to meet the elements of Article III standing.

Defendants contend that plaintiffs have failed to adequately plead the first element, injury-in-fact. Injury-in-fact is "an invasion of legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (footnote, citations, and internal quotation marks omitted). The "particularity" requirement "demands that a plaintiff must have personally suffered some harm." Katz, 2012 WL at * 3 (citing Lujan, 504 U.S. at 560 n.1); see also Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 542 (1986) (Article III requires an individual plaintiff to show that "he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. . . .") (internal quotation marks omitted) (emphasis added). Even when a plaintiff brings an action under 29 U.S.C. § 1132(a)(2), to recover losses to a plan for breach of fiduciary duty,

5

the plaintiff still must satisfy Article III's individualized injury requirement. <u>Molina v. Union Independiente Autentica de la AAA</u>, 750 F.Supp.2d 417, 423-24 (D. P.R. 2010) ("While the remedy pursuant to section 1132(a)(2) is limited to the plan itself, plaintiff must still allege a <u>personally suffered injury</u> in order to establish standing . . . .") (emphasis added); <u>Bendaoud v. Hodgson</u>, 578 F.Supp.2d 257, 263 (D. Mass. 2008) ("[I]f an ERISA plan participant is to assert rights 'on behalf of the plan,' he must be asserting his own rights.").[4]

### 1. Plaintiffs' Standing Theories

A fiduciary of an ERISA plan is personally liable to the plan for "any losses to the plan" resulting from breaches of the "responsibilities, obligations, or duties imposed upon fiduciaries" by ERISA. 29 U.S.C. § 1109(a).[5] The statute enumerates four parties who may bring an action "for appropriate relief under section 1109": the Secretary of Labor, or a plan participant, beneficiary, or fiduciary. 29 U.S.C. § 1132(a)(2). Plaintiffs argue that they have standing to bring their ERISA claims under two theories: (1) as shareholders of DSM – a named fiduciary of the Plan – they may bring a derivative suit on behalf of the company ("shareholder derivative theory"); (2) as Plan participants,

---

[4] As the <u>Bendaoud</u> court noted, "nowhere does ERISA purport to give a participant standing to sue 'on behalf of' the plan. . . . [T]he quasi-representational capacity in which ERISA participants sometimes find themselves is a judicial elaboration on the statute's requirement that relief obtained under 29 U.S.C. § 1109 inure to the plan and not to an individual plaintiff." 578 F.Supp.2d at 263 n.6.

[5] 29 U.S.C. § 1109 states, in pertinent part: "(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." <u>See also</u> 29 U.S.C. § 1104 (establishing fiduciary duties).

they may bring a direct action under section 1132(a)(2) ("direct theory").

Under their shareholder derivative theory, which, by nature is intended to redress an injury to the company, plaintiffs must sufficiently allege actual harm to DSM to satisfy Article III. This, they do. See Docket # 1 ¶ 74 (describing restorative payment made by DSM and consequent losses to the company); id. ¶ 95 (describing losses shifted from the Plan to DSM through the restorative payment).

Under their direct theory, however, they fail to meet Article III's injury-in-fact requirement. While the Verified Complaint alleges harm to the Plan and to DSM, it does not allege any injury to plaintiffs personally as Plan participants. Since they lack constitutional standing under their direct theory, I evaluate whether plaintiffs have statutory standing to bring an ERISA claim only under their shareholder derivative theory.

### B. Statutory Standing for Counts I-V

As explained above, DSM has direct standing to sue for breach of fiduciary duty because it is a fiduciary of the Plan. 29 U.S.C. § 1132(a)(2). Plaintiffs are shareholders of DSM, who under Massachusetts law, have standing to bring a derivative suit on behalf of the corporation, Mass. Gen. Laws ch. 156D, § 7.41, to "vindicate a right of the corporation." Halebian v. Berv, 457 Mass. 620, 625 (2010). They argue that since DSM has the right to bring a direct suit under ERISA, they may bring a derivative suit to assert that right. However, "the fact that state law provides a means by which a shareholder may assert a corporate cause of action does not necessarily mean that the shareholder is entitled to standing under ERISA simply because the corporation is a

fiduciary entitled to bring an ERISA action." Schrader v. Hamilton, 959 F.Supp. 1205, 1212 (C.D. Cal. 1997).

Plaintiffs cite to cases City of Hope Nat'l Medical Center v. HealthPlus, Inc., 156 F.3d 223 (1st Cir. 1998), and I.V. Services of America, Inc. v. Inn Development and Management, Inc., 182 F.3d 51 (1st Cir. 1999), for the proposition that a plaintiff that lacks direct standing as an ERISA beneficiary, participant, or fiduciary may nevertheless proceed derivatively to bring an ERISA claim because such plaintiff has been assigned the rights of one who has direct standing. See City of Hope, 156 F.3d at 228 (recognizing an assignee's rights to bring a derivative ERISA suit on behalf of an assignor with direct standing; reasoning that in the ERISA context "Congress did not intend to disturb the common law principles of assignment"); I.V. Services, 182 F.3d at n.3 (citing City of Hope approvingly in rejecting defendant's argument that plaintiff lacked standing to bring an ERISA suit to enforce health benefits plan; where the insured had signed a form authorizing that her benefits be paid directly to plaintiff, plaintiff had a "colorable claim" that it was the insured's assignee for purposes of enforcement).

Plaintiffs argue that "a shareholder's right to stand in the shoes of a corporation to enforce its rights or claims is materially indistinguishable from that of an assignee's enforcement of a right of its assignor.  In each case their rights 'com[e] from another.'" Docket # 40 at 15 (citing City of Hope, 156 F.3d at 228).  While they are correct that in either context (shareholder/corporation or assignee/assignor) the assignee's or shareholder's right to sue is derivative, there is an important material difference

between an assignee bringing a derivative suit under ERISA and a shareholder bringing the same.

In Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 149 (1985), the Supreme Court held that extra-contractual compensatory or punitive damages caused by improper or untimely processing of benefits claims were unavailable under ERISA. The Court explained its holding thus:

> The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a comprehensive and reticulated statute. . . . We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA. Where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.

Id. at 146-47 (internal quotation marks and citations omitted) (emphasis in original).

Mass. Mutual's reasoning counsels that Congress did not intend to expand the universe of parties who could bring an ERISA suit beyond those enumerated in the statute. See also Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 26 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under § 502 [29 U.S.C. § 1332]; it does not provide anyone other than participants, beneficiaries or fiduciaries with an express cause of action for a declaratory judgment [under 29 U.S.C. § 1332(a)(3)(B)] on the issues in this case."); Kwatcher v. Massachusetts Serv. Employees Pension Fund, 879 F.2d 957, 965 (1st

9

Cir. 1989) ("[S]ince Congress has carefully catalogued a selected list of persons eligible to sue under ERISA, there is no plausible rationale for us gratuitously to enlarge the roster."), abrogated on other grounds by Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1 (2004).  But this is exactly the situation that would result if the court were to recognize a shareholder's right to bring a derivative suit under ERISA. See 7C Charles Alan Wright et al., Federal Practice and Procedure § 1838 (3d ed. 2011) ("There is no rule of law that prevents two in-personam actions involving the same claims and identical or similar parties from proceeding simultaneously in separate courts. . . . Since most shareholder-derivative suits are in-personam actions, this means that multiple lawsuits involving the same underlying conduct are a real possibility.").  Trustee defendants point out as much, arguing: "When an assignor assigns ERISA benefits to an assignee, only one party at any given time (the assignor before; the assignee after) may bring suit. . . . Allowing shareholders of a corporation to bring suit, however, would significantly expand the parties: from one party (the corporation) to potentially thousands (the corporation and each of its shareholders)." Docket # 45 Ex. 1 at 4.  Even in City of Hope, on which plaintiffs primarily rely, the First Circuit proceeded cautiously in recognizing an assignee's derivative right to sue under ERISA, distinguishing between "substitution" of one party for another and the "expansion of the parties," and basing its holding on the fact that the case did not implicate the latter situation. 156 F.3d at 228 ("If an assignee seeking relief in court stands in the place of an assignor, there has been a substitution rather than an expansion of the parties."); id. at 228-29 (noting that its holding is "consistent

10

with our position in Kwatcher [879 F.2d at 965] that there is no justification for expansion by the court of the roster of persons eligible to sue under ERISA").[4]

Moreover, where, as here, the company has made a restorative payment to the Plan, allowing a shareholder to bring a derivative ERISA action will not further the "two goals [Congress sought to achieve] in enacting ERISA: (1) to protect plans and beneficiaries and (2) to encourage employers to create and maintain benefit plans for their employees." Schrader, 959 F.Supp. at 1211 (holding that shareholder lacked standing to bring a derivative action under ERISA for these reasons and because he is not an "enumerated party" under section 1332(a)).[5]

### 1. Plaintiffs' Standing to Request Equitable Relief

Plaintiffs also request injunctive and other equitable relief under Counts I-V. To have standing to obtain injunctive relief, "plaintiffs must demonstrate that they face a threat of future harm" from the defendants. Steir v. Girl Scouts of the USA, 383 F.3d 7,

---

[4] Likewise, in the other cases plaintiffs cite that have recognized standing to bring a derivative ERISA suit, there is a one-to-one substitution of the party with derivative standing for the party (often deceased) with direct standing. See, e.g., Cottle v. Metro. Life Ins. Co., 1993 WL 8201, at *2 (N.D. Ill. Jan. 13, 1993) (trustee standing in the shoes of deceased beneficiary); James v. Louisiana Laborers Health & Welfare Fund, 766 F.Supp. 530, 533 (E.D. La. 1991) (estate administrator stepping into shoes of decedent who was plan participant).

[5] Plaintiffs submit Levy v. Chandler, 287 F.Supp.2d 831 (E.D. Tenn. 2003), as persuasive authority and argue that its reasoning, and not Schrader's, should apply here. Levy involved plaintiffs' motion to remand their shareholder derivative suit after removal on the grounds that their state law claims for breach of corporate fiduciary duty were not completely preempted by ERISA so as to render them subject to federal jurisdiction. Id. at 833-34. The standing issue was not relevant to the court's preemption inquiry, but the court noted that "because plaintiffs are suing derivatively on behalf of [the company], [they] are entitled to assert their claims available to the company as a fiduciary under [29 U.S.C. § 1132(a)(2)]." 287 F.Supp.2d at 838 n.6.
  The Levy court also distinguished Schrader as a case where "the corporation . . . had already agreed to compensate the ERISA plan at issue with money from the corporate treasury. . . . Thus, this is not an action by one fiduciary for contribution from another [like Schrader], but an action in the first instance to cure the harm produced by a series of breaches of ERISA fiduciary duties." 287 F.Supp.2d at 839 n.7. As discussed above, the facts in Schrader more closely align with the facts in this case.

15 (1st Cir. 2004). Their complaint fails to do so. Although the complaint references "prior disloyal conduct" by Trustee defendants Demoulas and Sullivan, Docket #1 Ex. A ¶¶ 77-78, such allegations are insufficient here because plaintiffs have not alleged that they face continuing harm. See Steir, 383 F.3d at 16 ("To demonstrate the prospect of future harm, the essential prerequisite for equitable relief, a plaintiff must show more than that she has been injured by an unlawful practice. 'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'") (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

For the aforementioned reasons, plaintiffs lack statutory standing to bring a shareholder derivative claim under ERISA; thus, their ERISA claims (Counts I-V), including their requests for equitable relief, fail.

### C. Count VI for Declaratory Relief

Plaintiffs allege that Article 9 of the Plan provides that DSM will indemnify a Plan fiduciary for expenses incurred in connection with his responsibilities, unless due to the fiduciary's bad faith or willful misconduct. Docket # 1 Ex. A ¶ 160. They seek a declaratory judgment determining defendants' claims to indemnification. Under 28 U.S.C. § 2201, the court may grant declaratory relief "[i]n a case of actual controversy within its jurisdiction[.]" Since the ERISA claims are dismissed, no such case remains. Count VI is therefore dismissed.

### D. Count VII for Mass. Common Law Breach of Fiduciary Duty

Since all federal claims are dismissed, and since the parties agree that Count VII

should be dismissed under these circumstances, I choose not to exercise supplemental jurisdiction over this count. See 28 U.S.C. § 1367(c)(3).

### III.  Plaintiffs' Motion for Leave to Amend the Verified Complaint

Fed. R. Civ. P. 15(a)(2) provides that the "court should freely give leave [to amend a pleading] when justice so requires."  "The leave sought should be granted unless the amendment would be futile or reward undue delay."  Abraham v. Woods Hole Oceanographic Institute, 553 F.3d 114, 117 (1st Cir. 2009).  Only defendant Darman has filed an opposition, arguing that amending would be futile.  However, the case is in its early stages, no discovery has been conducted, no party will be prejudiced by plaintiffs' filing an amended complaint, and there are no allegations that plaintiffs have acted with undue delay or bad faith.  Given Rule 15's liberal standard, the motion for leave to amend is allowed.

### IV.  Conclusion

The Motions to Dismiss (Docket ## 29, 33, 35, 37) are ALLOWED.  The Motion to Stay filed by defendants Carleton, Roazen, Shea, and DSM (Docket # 34) is DENIED AS MOOT.  Plaintiffs' Motion for Leave to File a Surreply in Response to Trustee Defendants' Motion to Dismiss (Docket # 55) is ALLOWED.  Plaintiffs' Motion that the Court Take Judicial Notice of Positions Asserted by Defendant Trustees in Related Case (Docket # 57) is DENIED as irrelevant to this motion.  Plaintiffs' Motion for Leave to Amend the Verified Complaint (Docket # 47) is ALLOWED, consistent with the rulings herein.

| | |
|---|---|
| <u>March 20, 2012</u><br>DATE | <u>/s/Rya W. Zobel</u><br>RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |